UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:17-cv-02983-CAS(AGRx) | Date | February 28, 2018 |
| Title | MICHEL DESTA V. WINS FINANCE HOLDINGS INC. ET AL. | | |

Present: The Honorable     CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                    Not Present

**Proceedings:**     (IN CHAMBERS) - DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT (Dkt. 33, filed October 24, 2017)

## I.     INTRODUCTION

On April 20, 2017, plaintiff Michael Desta commenced this putative class action alleging violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78(a) et seq. ("the Exchange Act") against defendants Wins Finance Holdings Inc. ("Wins"), Jianming Hao ("Hao"), Renhui Mu ("Mu"), Junfeng Zhao ("Zhao"), and Peiling He ("He").[1]  Dkt. 1. On June 26, 2017, the Court appointed Brian Gabrich, Christopher Ikeocha, and Raymond Mentor as lead plaintiffs and approved their selection of counsel pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u4(a)(3)(B).  Dkt. 21.

On August 25, 2017, plaintiffs filed an Amended Class Action Complaint asserting (1) violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b–5(a) and (c) promulgated thereunder, 17 C.F.R. § 240.10b–5(a) & (c); and (2) violation of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  Dkt. 32. ("Compl.")  The gravamen of the complaint is that defendants falsely stated Wins maintained its principal executive offices in the United States in order to satisfy the criteria for inclusion in the Russell 2000 Index.  Id. ¶¶ 2–6.  Plaintiffs allege that the class period runs from February 23, 2016 to June 7, 2017, inclusive.  Id. ¶ 1.

---

[1] Hao is the co-Chief Executive Officer ("CEO") and Chairman of the Board of Wins; Mu is the company's co-CEO and Chief Operating Officer ("COO"); and Zhao is the Chief Financial Officer ("CFO").  The amended complaint removed He as a defendant; and she was terminated as a party by the Court on September 16, 2017.  See Dkt. 32.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL          'O'**

| Case No. | 2:17-cv-02983-CAS(AGRx) | Date | February 28, 2018 |
|---|---|---|---|
| Title | MICHEL DESTA V. WINS FINANCE HOLDINGS INC. ET AL. | | |

On October 24, 2017, defendants filed a motion to dismiss the complaint for failure to state a claim for securities fraud pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Dkt. 33 ("Mot."). On December 22, 2017, plaintiffs filed an opposition. Dkt. 36 ("Opp'n"). On January 22, 2018, defendants filed a reply. Dkt. 40 ("Reply"). The Court held a hearing on February 12, 2018. Having carefully considered the parties' arguments, the Court rules as follows.

## II.    BACKGROUND

The following factual background is based on the allegations in the complaint and supporting exhibits.

Founded in 2006, Wins is a Cayman Islands company with operations located primarily in Jinzhong City, Shanxi Province and Beijing, China. The company principally provides financial guarantee, financial leasing and financial advisory services to Chinese small and medium enterprises ("SMEs"), to which commercial banks in China have been reluctant to lend due to higher credit risks and lack of credit support. Compl. ¶¶ 7–8, 37. On October 28, 2015, Wins went public on the Nasdaq stock exchange via a reverse merger with Sino Mercury Acquisition Corp., a blank-check company formed by former Wins President and Board member Richard Xu ("Xu") for the specific purpose effectuating the merger. Id. ¶ 48.

Wins struggled to keep its Nasdaq listing due to lack of investor interest, evidenced by the stock's low trading volume and a scarcity of shareholders. Id. ¶¶ 12, 51. On December 15, 2015, Wins disclosed that it received a notice from Nasdaq's Listing Qualifications Department stating that the Nasdaq staff had determined that the company would be subject to delisting for failure to meet the exchange's initial 300 round lot shareholder requirement. Id. ¶ 52. Nasdaq Listing Rule 5505(a)(3) requires that a company applying to list its primary equity security on Nasdaq have at least "300 Round Lot Holders," i.e., at least 300 beneficial holders with ownership of 100 shares or more. Id. ¶ 53. Although Wins successfully appealed the delisting determination before the Nasdaq Listing Qualifications Panel, the company was still faced with the "imminent risk" that it could be delisted due to the lack of outside shareholders. Id. ¶ 55. To keep its listing, Wins had a continuing duty to maintain 300 round lot holders during the entire course of its listing on Nasdaq. Id. ¶ 55 (citing Nasdaq Listing Rule 5550(a) ("[a] Company that has its Primary Equity Security listed on the Capital Market must continue to" have "[a]t least 300 Public Holders.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02983-CAS(AGRx) | Date | February 28, 2018 |
|---|---|---|---|
| Title | MICHEL DESTA V. WINS FINANCE HOLDINGS INC. ET AL. | | |

Faced with the risk of being delisted, defendants "set their eyes on the Russell 2000 Index." Id. ¶ 13. The Russell 2000 Index, maintained by FTSE Russell, is a small-cap stock market index of the bottom 2,000 stocks in the Russell 3000 Index, which consists of the 3,000 largest U.S. public companies and nearly 100 percent of the capitalization of the U.S. stock market. Id. Pursuant to the Russell U.S. Equity Indexes Constructions and Methodology, FTSE Russell uses objective criteria, including a company's market value, headquarters and location of assets, among other factors, to assign companies to the U.S. equity market. Id. ¶ 16. The Russell 2000 Index is by far the most common benchmark for "small-cap" mutual funds and Exchange Traded Funds ("ETFs"). Id. ¶ 13. These funds are usually passively managed by holding all of the securities in the same proportions as the index. Id. Accordingly, if Wins were to be included in the Russell 2000 Index, all of the funds tracking the index would automatically purchase Wins shares. Id. ¶ 14. Wins would be guaranteed sufficient beneficial holders to comply with Nasdaq's initial listing requirements of having 300 round lot holders and the continued listing requirement of having 300 public holders. Id. ¶¶14, 52.

From the date the company went public to February 22, 2016, Wins reported in its filings with the U.S. Securities & Exchange Commission ("SEC") that its principal executive offices were located at 1F, Building 7, No. 58 Jianguo Road, Chaoyang District, Beijing 100024, People's Republic of China ("PRC"). Id. ¶ 38. Because the company's principal executive offices were not in the United States, Wins was not eligible for inclusion in the Russell 2000 Index. Id. ¶¶ 15, 61, 65–67. The Russell 2000 Index is redetermined annually; and because Wins went public in October 2015, the earliest opportunity for the company to be included in the index was June 2016, when its composition was redetermined by FTSE Russell. Id. ¶17. On February 23, 2016, Wins represented in an SEC filing that its principal executive offices were located at 7 Times Square, 37th Floor, New York, NY 10036. Id. ¶ 64. On June 10, 2016, Wins was included in the newly reconstituted Russell 2000 Index and the stock's trading volume spiked. Id. ¶18. The average daily trading volume of Wins stock from June 13, 2016 to August 5, 2016 was five times that of the period from Wins' initial listing to June 10, 2016, the date that Wins was first included in the Russell 2000 Index. Id. ¶ 19.

On December 12, 2016, *Seeking Alpha* published an article by Anthony Thorpe ("Thorpe") titled "Wins Finance and the Case of the Missing Headquarters," which called into question whether Wins actually had its principal executive offices located in the United States. Id. ¶ 20, Ex. 1. Thorpe writes that a fellow contributor, "Fuzzy Panda Shorts", visited Wins' office in New York but found "no records" showing the company

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-02983-CAS(AGRx) | Date | February 28, 2018 |
|---|---|---|---|
| Title | MICHEL DESTA V. WINS FINANCE HOLDINGS INC. ET AL. | | |

was located at the listed address.  Id.  Thorpe writes that he discovered an investment firm named ForeFront Capital Advisors, LLC ("ForeFront"), owned by former Wins director Bradley Reifler ("Reifler"), was located at Wins' listed address.  Id.  Following the article's publication, Wins' stock price fell $45.50 per share or over 32 percent over two trading days to close at $92.50 per share on December 13, 2016.  Id. ¶ 92.  However, the *Seeking Alpha* article did not mention the significance of Wins having its principal executive offices located in the United States, or that the purpose and effect of the address listing was to have Wins included in the Russell 2000 Index.  Id. ¶ 93.

On January 9, 2017, in a Form 6-K filed with the SEC, Wins changed the location of its principal executive offices back to the address in Beijing.  Id. ¶ 94.  However, Wins remained on the Russell 2000 Index, and thus continued to benefit from artificial investor demand and continued trading at an inflated price.  Id. ¶ 95.

On March 30, 2017, *Seeking Alpha* published an article by "Fuzzy Panda Shorts" titled "Wins Finance - Active SEC Investigation And Manipulation Of A Russell Index"—which stated that the address and phone number in Wins' SEC filings were "false" and that the company used the New York address to "trick" FTSE Russell into including Wins in the Russell 2000 Index so as to create artificial demand for Wins shares and inflate its stock price.  Id. ¶ 96, Ex. 2.  The author also indicated that she had submitted a Freedom of Information Act ("FOIA") request to the SEC for information on any investigations into Wins, and based on the response, it appeared that certain SEC enforcement activities against the company were ongoing.  Id.  On the same day, *Bloomberg* published a thoroughly reported article titled "This Chinese Stock Soared 4,500% on Nasdaq and No One Knows Why", which described unusual trading activity in Wins' stock, the correlation between the company's address change and its inclusion in the Russell 2000 Index, and indicated that there were no signs of any business at the New York address listed in the company's SEC filings.  Id. ¶ 97, Ex. 3.  Wins' share price fell $135.61 per share or over 48 percent over the next two trading days to close at $144.99 per share on March 31, 2017.  Id. ¶ 98.

The absence of business activity at the New York address was confirmed by a confidential witness who is a senior employee of Forefront.  Id. ¶ 50.  The confidential witness stated that during the class period there was one temporary desk for Xu at the office but no space for other Wins employees.  Id. ¶ 74.  According to the confidential witness, no one answered phone calls for Wins, and Xu "would just come in, but not for long, then leave. . . . once every month or, probably closer to every other month."  Id. ¶ 75.  The confidential witness was not familiar with any Wins executives or employees; he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02983-CAS(AGRx) | Date | February 28, 2018 |
|---|---|---|---|
| Title | MICHEL DESTA V. WINS FINANCE HOLDINGS INC. ET AL. | | |

only saw former president Xu at the office.  Although Xu was no longer employed by Wins after July 2016, the confidential witness stated that Xu was last seen at the ForeFront office in approximately late 2016 or early 2017.  Id. ¶¶ 48, 78–79.

On April 3, 2017, FTSE Russell announced revisions to its inclusion criteria and issued a publication titled "Russell US Index Reconstitution 2017 – China N Shares Construction and Methodology Update." Id. ¶ 99.  These revisions specifically applied to Chinese companies and stated that those companies would not be considered for inclusion in the Russell 2000 Index regardless of their satisfaction of other criteria.  Id. Following this announcement, shares in Wins dropped from an opening price of $146.49 on April 3, 2017 to a closing price of $81 per share on June 6, 2017.  Id. ¶ 100.  On June 7, 2017, Nasdaq halted trading in Wins' shares, requesting additional information from the company.  Id. ¶ 101.  On August 9, 2017, Wins disclosed that it received a second delisting determination letter from Nasdaq.  Id. ¶ 103. The letter informed Wins that its shares would be delisted from Nasdaq for, among other things, potential misrepresentations and failure to satisfy the initial 300 round-lot holder requirement.  Id.

## III.    LEGAL STANDARDS

A successful claim under Section 10(b) and Rule 10b–5 proves six elements: "(1) a material misrepresentation or omission; (2) scienter (i.e., a wrongful state of mind); (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance upon the misrepresentation (often established in 'fraud-on-the-market' cases via a presumption that the price of publicly traded securities reflects all information in the public domain); (5) economic loss; and (6) loss causation." Loos v. Immersion Corp., 762 F.3d 880, 886–87 (9th Cir. 2014) (citing Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341–42 (2005).

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964–65 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

A federal securities fraud suit is also subject to the demanding pleading requirements of the PSLRA.  Enacted by Congress in 1995 to provide "protections to discourage frivolous [securities] litigation," H.R. Conf. Rep. No. 104-369, 104th Cong.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02983-CAS(AGRx) | Date | February 28, 2018 |
| Title | MICHEL DESTA V. WINS FINANCE HOLDINGS INC. ET AL. | | |

1st Sess. at 32 (Nov. 28, 1995), the PSLRA strengthened the already-heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  Under the PSLRA, private actions based on allegations of material misstatements or omissions must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).  In addition, the PSLRA imposes strict requirements for pleading scienter in actions brought pursuant to Section 10(b) and Rule 10b–5, requiring that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).

The Ninth Circuit has held that "a private securities plaintiff proceeding under the [PSLRA] must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct."  In re Silicon Graphics, Inc., 183 F.3d 970, 974 (9th Cir. 1999).  In determining whether a plaintiff has sufficiently pleaded scienter, a court must consider "whether the totality of plaintiffs' allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness."  Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1230 (9th Cir. 2004) (quoting No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 938 (9th Cir. 2003)).  Moreover, "[i]n determining whether a strong inference of scienter exists, [a court] must consider all reasonable inferences, whether or not favorable to the plaintiff." Id.

## IV.    DISCUSSION

Defendants contend that plaintiffs have failed to state a claim against Wins for alleged violations of Section 10(b) of the Exchange Act and Rule 10b–5 because the complaint fails to adequately allege (1) falsity, (2) scienter, (3) loss causation, and (4) reliance.  The Court addresses each argument below.

### A.    Falsity

The PSLRA imposes "exacting requirements" for pleading falsity.  Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1070 (9th Cir. 2008).  The complaint must specify each statement alleged to be misleading and why the statement was false and misleading. 15 U.S.C. § 78u-4(b)(1).  A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why the statements were false, does not satisfy this standard.  Metzler, 540 F.3d at 1070.  As under Rule 9(b), a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL          'O'**

| Case No. | 2:17-cv-02983-CAS(AGRx) | Date | February 28, 2018 |
|---|---|---|---|
| Title | MICHEL DESTA V. WINS FINANCE HOLDINGS INC. ET AL. | | |

plaintiff seeking to plead falsity under the PSLRA generally must identify "specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." Ronconi v. Larkin, 253 F.3d 423, 432 (9th Cir. 2001).

Plaintiffs allege the class period begins on February 23, 2016 when Wins falsely stated in a Form 6-K filed with the SEC that Wins' principal executive offices were located at the New York address.  Compl. ¶ 84.  Plaintiffs further allege that Wins filed 19 forms with the SEC from February 23, 2016 to January 6, 2017—each of them fraudulently designating the New York address as its principal executive offices—and that defendants Hao, Mu, and Zhao attested to the accuracy of these filings in an annual report, Form 20-F, filed with the SEC on September 27, 2016 and an amended report filed approximately one month later.  Id. ¶¶ 85–88.  Plaintiffs allege that these statements were false based on the information disclosed in the *Seeking Alpha* and *Bloomberg* articles, which was independently verified by the confidential witness.  Id. ¶¶ 73–83.

As an initial matter, the parties dispute what constitutes a company's "principal executive offices" as it appears on the relevant SEC forms.  Plaintiffs' point to Nasdaq's Listing Rules, which define "principal place of business" as "the executive office from which the sole proprietor or the officers, partners, or managers of the [company] direct, control, and coordinate [its] activities."  Opp'n at 9–10.  Defendants argue it is improper to conflate these terms because the Supreme Court in Hertz Corp. v. Friend, 559 U.S. 77, 97 (2010) held that the mere filing of an SEC form listing a corporation's "principal executive offices" does not, without more, constitute sufficient proof to establish a corporation's "principal place of business" for diversity jurisdiction purposes.  Defendants also indicate that no SEC rule defines "principal executive offices," although "executive officer" is defined as the company's "president, any vice president . . . in charge of a principal business unit" or any other "officer" or "person" who "performs similar policy making functions."  17 C.F.R. § 240.3b-7.  Notwithstanding the lack of a statutory definition or clear regulatory guidance, plaintiffs can plead falsity because the gravamen of the complaint is that Wins did not, in fact, maintain an office at the New York address.

Defendants nonetheless argue the complaint "admits" that Wins maintained its "principal executive offices" in the United States.  Mot. at 6 (citing Compl. ¶¶ 5, 49).  However, paragraph 5 states that Wins "did not have its principal executive offices" at the New York address, and that it purported presence "was limited to a single barren, temporary desk" located inside the offices of ForeFront.  Compl. ¶ 5.  Paragraph 49

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:17-cv-02983-CAS(AGRx) | Date | February 28, 2018 |
|---|---|---|---|
| Title | MICHEL DESTA V. WINS FINANCE HOLDINGS INC. ET AL. | | |

states: "Wins falsely represented as its principal executive offices . . . a small room located within ForeFront's offices in New York." Id. ¶ 49.  Defendants also maintain the confidential witness "confirmed" that Wins had its principal executive offices in New York—even though the witness alleges that there was only a "temporary desk" at ForeFront for Xu, who would drop by once every month or every other month.  Mot. at 6; Compl. ¶¶ 74–77.  These allegations do not constitute an "admission" that Wins did not make any false or misleading statements.  At oral argument, plaintiffs clarified that the complaint does not even admit that Xu was working on Wins business during his infrequent visits to Forefront.  Indeed, the complaint alleges that the confidential witness recalled last seeing Xu at Forefront in late 2016 or early 2017, which was several months after Xu's affiliation with Wins had ended.  Id. ¶¶ 48, 78–79.

Relatedly, defendants argue the complaint and SEC filings establish that Wins' New York office was used by its principal executives within the meaning of 17 C.F.R. § 240.3b-7 such that it constitutes the company's "principal executive offices."  Mot. at 7–8.  The complaint alleges that Xu had a temporary desk at ForeFront.  Compl. ¶¶ 74–76.  In addition, the *Bloomberg* article attached as an exhibit to the complaint states Reifler "lets Richard Xu, a former Wins president, work in the office."  Id., Ex. 3.  Defendant Hao, Wins' Co-CEO, also filed a form with the SEC listing the office as his business address.  Mot. at 7–8, Musoff Decl., Ex. E.  Again, however, none of this establishes that the New York address was, in fact, the location of Wins' principal executive offices.

In addition, defendants argue that because Wins is a "holding company," whose operations consist of "the receipt of dividend payments from its indirectly owned Chinese subsidiaries," its presence in the United States was sufficient for the company's purposes.  Mot. at 6–7, see Declaration of Jay K. Musoff ("Musoff Decl."), Ex. B (2016 SEC Form 20-F) at 12 ("We are a holding company located outside China and rely on dividend payments from our subsidiaries."); id. at 12 ("Our major operations are located in the PRC, and all of our assets and subsidiaries are located in the PRC.").  However, in ruling on a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations in the complaint and construe them in the light most favorable to plaintiffs.  The complaint alleges that Wins essentially had no presence or business activity at ForeFront's office in New York other than sporadic visits by Xu, which may or may not have been related to Wins business.  See Compl. ¶¶ 73–83.  Whether this location could possibly have served as the principal executive offices of a holding company like Wins is a factual question not appropriate for determination at the pleading stage.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-02983-CAS(AGRx) | Date | February 28, 2018 |
| Title | MICHEL DESTA V. WINS FINANCE HOLDINGS INC. ET AL. | | |

Accordingly, the Court concludes that plaintiffs have adequately alleged the relevant SEC filings contained false statements regarding the location of Wins' principal executive offices.

### B.    Scienter

Under the PSLRA, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). A defendant is liable under Section 10(b) and Rule 10b-5 when he acts with scienter, a mental state that includes the "intent to deceive, manipulate, or defraud," and "deliberate recklessness." City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc., 856 F.3d 605, 619 (9th Cir. 2017). A strong inference of scienter must be "at least as compelling as any opposing inference one could draw from the facts alleged." Id. (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007)). When analyzing the sufficiency of a plaintiff's scienter pleadings, a court first "determine[s] whether any of the allegations, standing alone, are sufficient to create a strong inference of scienter." Id. (quoting N.M. State Inv. Council v. Ernst & Young LLP, 641 F.3d 1089, 1095 (9th Cir. 2011)). If none of the individual allegations are sufficient, a court then "conducts a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." Id.

Plaintiffs contend the complaint satisfies this requirement by pleading several "indicia" of scienter. Opp'n at 12. First, plaintiffs allege that Wins was motivated to falsify its address in order to satisfy the Russel 2000 Index's inclusion criteria. Id. at 12–14. The complaint alleges that due to tepid investor interest, Wins was at risk of being delisted by Nasdaq for not having sufficient outside shareholders. Compl. ¶¶ 9–11, 51–55. Because the Russell 2000 Index is tracked by small-cap mutual funds and ETFs, plaintiffs allege that inclusion in the index would provide Wins sufficient shareholders to comply with Nasdaq's listing requirements. Id. ¶ 14. Second, the act of changing the address on Wins' SEC filings was a "proactive decision," demonstrating that the decision was approved by the company's managers. Opp'n at 14. Third, the complaint alleges that Zhao, Wins' CFO, has a track record of leadership in companies accused of committing securities fraud. Compl. ¶ 108. Fourth, the complaint alleges that Wins is now under SEC investigation based on FOIA response cited in the second *Seeking Alpha* article. Id., ¶ 105. Fifth, disclosure of the alleged fraud prompted FTSE Russell to revise its inclusion criteria and categorically bar all companies controlled by Chinese individuals or entities from the Russell 2000 Index. Id. ¶ 26. Plaintiffs maintain that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:17-cv-02983-CAS(AGRx) | Date | February 28, 2018 |
|---|---|---|---|
| Title | MICHEL DESTA V. WINS FINANCE HOLDINGS INC. ET AL. | | |

these allegations, taken together, support a strong inference that defendants falsely stated Wins' principal executive offices were located in the United States.  Opp'n at 12–16.

The complaint does not contain detailed factual allegations concerning the fraudulent intent of any individual defendant.  Instead, plaintiffs argue that the complaint's allegations give rise to collective or corporate scienter.  Opp'n at 15–16.  The Ninth Circuit has noted that the corporate scienter doctrine "might be appropriate in some cases . . . [f]or instance [where] . . . a company's public statements were so important and so dramatically false that they would create a strong inference that at least some corporate officials knew of the falsity upon publications."  In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1063 (9th Cir. 2014).  Similarly, a strong inference of scienter may arise where allegedly false information is "readily apparent" to senior management to the point where management "must have known" that the statements to the public were false because it was so "obvious from the operations of the company" and management's awareness of the falsity can be assumed.  Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1001 (9th Cir. 2009) (quoting Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 987–89 (9th Cir. 2008)).  Here, plaintiffs argue that the complaint adequately pleads scienter because the individual defendants—who are the Co-CEOs, COO, and CFO of Wins—"must have known" where the company's principal executive offices were located; and, despite this knowledge, they nevertheless signed SEC filings falsely stating that the company's principal executive offices were located at the New York address.  Opp'n at 15–16.

The Court agrees that based on plaintiffs' factual allegations, a strong inference of scienter may be inferred because it would have been readily apparent to Wins' senior corporate executives that the company did not, in fact, maintain its principal executive offices in New York; and, therefore, the individual defendants must have known that the SEC filings they signed contained false statements.  Defendants' arguments to the contrary are unavailing.  First, defendants maintain that the fraud allegations are conclusory, and plaintiffs cannot allege scienter with particularity by asserting individuals within the company "must have known" based upon their corporate positions—particularly in light of plaintiffs' "admissions" that Wins did in fact maintain an office at the New York address.  Reply at 8–9.  As previously discussed, the Court does not read plaintiffs' allegations as an admission.  Moreover, the location of a company's principal executive offices is not the kind of day-to-day activity of which management would not be aware.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:17-cv-02983-CAS(AGRx) | Date | February 28, 2018 |
| Title | MICHEL DESTA V. WINS FINANCE HOLDINGS INC. ET AL. | | |

Second, defendants argue that plaintiffs' "motivation theory" is belied by the undisputed factual timeline, which demonstrates that "Wins had already satisfied Nasdaq's initial 300 round-lot shareholder listing requirement at the time it disclosed that its principal executive offices were in the U.S. and therefore lacked the alleged motivation to be included in the Russell 2000 Index."[2] Reply at 8. Defendants indicate that five days before the first alleged misrepresentation on February 23, 2016, the Nasdaq Listing Qualifications Panel had determined that Wins' shares would remain listed despite a prior finding by the Nasdaq staff that Wins had not satisfied the 300 round-lot holder requirement. Musoff Decl., Ex. D. Accordingly, defendants contend this successful appeal shows there was no "imminent risk" of delisting to support an inference that Wins was motivated to falsify its address to get included in the Russell 2000 Index. Mot. at 10–11.

In response, plaintiffs argue that Wins was never "off the hook" for the 300 round-lot holder requirement, pointing to the complaint's allegations regarding Nasdaq's second delisting determination letter in August 2017. Opp'n at 13. On August 9, 2017, Wins announced that it received a second delisting determination letter from Nasdaq based on alleged misrepresentations made to Nasdaq and Wins' alleged failure to meet the 300 round-lot holder requirement at the time of its initial listing. Compl. ¶ 103. Plaintiffs also note that even if Wins was only subject to Nasdaq's continued listing requirement of having 300 public holders, there is no evidence that Wins would have met that requirement without being included on the Russell 2000 Index. Opp'n at 13 n.7. Plaintiffs assert that the reason Wins had "hundreds, if not thousands" of shareholders during the class period as alleged in the complaint was because the company manipulated its way onto the Russell 2000 Index, thus inflating its share ownership. Id.

---

[2] Defendants correctly point out that the complaint conflates Nasdaq's *initial* "300 Round Lot Holders" listing requirement (Nasdaq Listing Rule 5505(a)(3)) with the requirement that a listed company "continue" to have at least "300 Public Holders" (Nasdaq Listing Rule 5505(a)(3)). A "round lot holder" refers to a beneficial holder with ownership of 100 shares or more, whereas a "public holder" is defined as "holders of a security that includes both beneficial holders and holders of record, but does not include any holder who is, either directly or indirectly, an Executive Officer, director, or the beneficial holder of more than 10% of the total shares outstanding." Nasdaq Listing Rule 5005(a)(35), (37)–(38). Thus, the complaint mistakenly alleges that "to keep its listing, Wins had a continuing duty to maintain 300 Round Lot Holders during the entire course of its listing on Nasdaq." See Compl. ¶¶ 54–55.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-02983-CAS(AGRx) | Date | February 28, 2018 |
|---|---|---|---|
| Title | MICHEL DESTA V. WINS FINANCE HOLDINGS INC. ET AL. | | |

Although defendants' contentions suggest that there may not have been an "imminent" risk of Nasdaq delisting at the time of the first alleged misrepresentation, the Court nevertheless finds that plaintiffs have satisfied their pleading burden. The facts alleged in the complaint support a strong inference of scienter, namely, defendants falsified the address of Wins' principal executive offices in order to pave the way for the company's inclusion on the Russell 2000 Index. While a strong inference of scienter must be "at least as compelling as any opposing inference one could draw from the facts alleged," Align Tech, 856 F.3d at 619, defendants have not come forward with any alternative explanation for the suspicious activity alleged in the complaint. Accordingly, the Court finds that plaintiffs have sufficiently alleged scienter.

### C.   Loss Causation

To establish loss causation, a plaintiff "must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the" plaintiff. Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 608 (9th Cir. 2014). In other words, "the plaintiff must plausibly allege that the defendant's fraud was *revealed* to the market and *caused* the resulting losses." Loos, 762 F.3d at 887 (emphasis in original) (internal quotation marks omitted). "The misrepresentation need not be the sole reason for the decline in value of the securities, but it must be a substantial cause." In re Gilead Scis. Secs. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted). At the pleading stage, "the plaintiff need only allege that the decline in the defendant's stock price was proximately caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated factors." Metzler, 540 F.3d at 1063; see also In re Gilead Scis. Secs. Litig., 536 F.3d at 1057 ("loss causation becomes most critical at the proof stage . . . and it is normally inappropriate to rule on loss causation at the pleading stage.").

Plaintiffs typically plead loss causation through allegations that the defendant's misrepresentation was revealed through " 'corrective disclosures' which caused the company's stock price to drop and investors to lose money." Lloyd v. CVB Fin. Corp., 811 F.3d 1200, 1209 (9th Cir. 2016). A corrective disclosure must relate to "the practices the plaintiff contends are fraudulent, as opposed to merely reports of the defendant's poor financial health generally." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 392 (9th Cir. 2010). It must also present previously undisclosed information to the market related to the alleged misrepresentation. See In re Maxim Integrated Prods., Inc. Secs. Litig., 639 F. Supp. 2d 1038, 1048 (N.D. Cal. 2009) ("[A] disclosure that does not reveal anything

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:17-cv-02983-CAS(AGRx) | Date | February 28, 2018 |
|---|---|---|---|
| Title | MICHEL DESTA V. WINS FINANCE HOLDINGS INC. ET AL. | | |

new to the market is, by definition, not corrective.") (internal quotation marks omitted). Either a single event or a "series of disclosures" can establish loss causation. Metzler, at 1071 n.6.

Plaintiffs indicate the complaint alleges three corrective disclosures. On December 12, 2016, *Seeking Alpha* published an article revealing that Wins' listed address was actually the address of ForeFront. Compl. ¶ 91. Wins stock price fell more than 32 percent over following two trading days. Id. ¶ 92. The second alleged corrective disclosure occurred on March 30, 2017, when *Seeking Alpha* and *Bloomberg* published articles revealing that the purpose and effect of Wins' change of address was to get the company listed on the Russell 2000 Index and create artificial demand for its shares. Id. ¶¶ 96–97. Finally, plaintiffs indicate that the third corrective disclosure occurred on April 3, 2017, when FTSE Russell announced it would remove all Chinese-controlled entities like Wins from the Russell 2000 Index. Opp'n at 17; Compl. ¶ 99. Following FTSE's announcement, Wins' stock price declined and Nasdaq halted trading approximately two months later. Compl. ¶¶ 100–01.

Defendants argue that none of these events constitute corrective disclosures. Regarding the first *Seeking Alpha* article, defendants contend it only disclosed that an anonymous contributor could find "no records" that Wins maintained its offices at the New York address. Mot. at 22. Because plaintiffs "alleged that Wins did in fact maintain that office," the inference in the article is "false" and cannot constitute a corrective disclosure. Reply at 18. Defendants further argue that the March 30, 2017, *Seeking Alpha* and *Bloomberg* articles do not qualify as corrective disclosures because "they presented no new facts." Id. at 18–19. Defendants reason that no new information was revealed because "the criteria for inclusion in the Russell 2000 index were publicly available and Wins had already disclosed its principal executive offices were located in China" on January 9, 2017. Id. According to defendants, the only event that could qualify as a corrective disclosure is Wins' SEC filing on January 9, 2017 that changed the location of its principal executive offices back to the Beijing address. Because Wins' stock price increased following this disclosure, defendants argue that loss causation cannot be established. Mot. at 22.

The Court finds plaintiffs' allegations sufficient to plead loss causation. The first *Seeking Alpha* article revealed to the market that Wins did not maintain its principal executive offices at the address listed on its SEC filings, and the company's stock price declined following this disclosure. This allegation, standing alone, is sufficient to establish loss causation at the pleading stage. The Court is not persuaded by defendants'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:17-cv-02983-CAS(AGRx) | Date | February 28, 2018 |
|---|---|---|---|
| Title | MICHEL DESTA V. WINS FINANCE HOLDINGS INC. ET AL. | | |

argument regarding the January 9, 2017 SEC filing. It is reasonable to infer that the price of Wins' stock did not drop following this disclosure because the *Seeking Alpha* article had already revealed the relevant information to the market. Regarding the subsequent *Seeking Alpha* and *Bloomberg* articles, the Court concludes that the issues of whether these articles presented previously undisclosed information to the market and caused further decline in the company's stock price are factual questions and need not be resolved at the pleading stage. Accordingly, the Court finds that plaintiffs have adequately alleged loss causation.

### D.    Reliance

Finally, defendants contend that plaintiffs fail to adequately allege reliance under either <u>Affiliated Ute Citizens of Utah v. United States</u>, 406 U.S. 128 (1972) or the fraud-on-the-market doctrine articulated in <u>Basic Inc. v. Levenson</u>, 485 U.S. 224 (1988). Mot. at 24–25. First, defendants note that the presumption of reliance under <u>Affiliated Ute</u> is limited to cases that "can be characterized as . . . primarily alleg[ing] omissions." <u>Binder v. Gillespie</u>, 184 F.3d 1059, 1064 (9th Cir. 1999). Here, however, plaintiffs allege a single, affirmative misrepresentation concerning the location of Wins' principal executive offices. Second, defendants argue that plaintiffs cannot rely on the fraud-on-the-market doctrine, which presumes reliance on an alleged deceit where the security is traded on an efficient market, and may be rebutted by showing the stock price was "not affected by the misrepresentation." <u>Basic</u>, 485 U.S. at 248. Defendants contend that the presumption has been rebutted in this case because "the price of Wins' stock *increased* following" the company's January 9, 2017 SEC filing. Mot. at 25.

Although the <u>Affiliated Ute</u> presumption may not apply because this case primarily involves misrepresentations rather than omissions, the Court finds that plaintiffs have sufficiently pleaded reliance based on the fraud-on-the-market doctrine. To rebut the presumption of reliance, defendants must introduce evidence showing the alleged "misrepresentation in fact did not lead to a distortion of price or that an individual plaintiff traded or would have traded despite his knowing the statement was false." <u>Basic</u>, 485 U.S. at 248. Defendants have not satisfied this burden merely by showing that Wins' stock price increased following the January 9, 2017 SEC filing. As previously explained, this event is not the relevant corrective disclosure. Moreover, following the corrective disclosures alleged by plaintiff, Wins' stock price declined sharply within a short time period. Ultimately, the issue of whether the alleged fraud had an impact on Wins' stock price is a factual question more appropriately decided on a motion for summary judgment. Accordingly, the Court finds that plaintiffs have adequately alleged reliance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:17-cv-02983-CAS(AGRx) | Date | February 28, 2018 |
| --- | --- | --- | --- |
| Title | MICHEL DESTA V. WINS FINANCE HOLDINGS INC. ET AL. | | |

**V.     CONCLUSION**

For these reasons, defendants' motion to dismiss the Amended Class Action Complaint is **DENIED**.  Defendants shall file an answer within fourteen (14) days of the date of this Order.

**IT IS SO ORDERED.**

|  | 00 | : | 00 |
| --- | --- | --- | --- |
| Initials of Preparer | | CMJ | |